UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-21529-CIV-MARTINEZ

ARMANDO MARTINEZ MARTIN,

       Petitioner,

v.

WARDEN, KROME NORTH SERVICE
PROCESSING CENTER and GARRET
J. RIPA, Field Office Director, United States
Immigration and Customs Enforcement Miami
Field Office, Enforcement and Removal
Operations,

       Respondents.

_____/

## ORDER

**THIS CAUSE** is before the Court on Petitioner Armando Martinez Martin's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), [ECF No. 1]. In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondents to show cause why the Petition should not be granted. (*See* [ECF No. 4]). Respondents filed their Response on March 13, 2026 ("Response"), [ECF No. 6], and Petitioner replied on March 15, 2026 ("Reply"), [ECF No. 7]. The Court heard oral arguments on the Petition on March 26, 2026. [ECF No. 8]. The Court has considered the briefing, oral argument, and the relevant law and is otherwise fully advised. For the reasons set forth herein, the Petition is **GRANTED**.

## I.    BACKGROUND

Petitioner Armando Martinez Martin is a Cuban national who has resided in the United States for over sixty years since his initial arrival in 1965. (Pet. ¶¶ 7, 10–11). As a lawful permanent resident, Petitioner lived in the United States with his parents and siblings, and then with his

American-born wife and two children. (*Id.* ¶¶ 11–12). In March 1999, however, Petitioner was convicted of second-degree murder. (*See* Notice to Appear [ECF No. 6-3] 1). The conviction prompted the Department of Justice, Immigration and Naturalization Service to issue a Notice to Appear and institute removal proceedings against Petitioner. (*Id.*; Pet. ¶ 14). Thereafter, in September 2001, an Immigration Judge ("IJ") ordered Petitioner's removal to Cuba.[1] (*See* Removal Order [ECF No. 6-4]). But Petitioner was never removed from the United States. After completing his sentence, on July 22, 2016, Florida Department of Corrections, Walton Correctional Institution released Petitioner directly into U.S. Immigration and Customs Enforcement ("ICE") custody to await his removal. (Pet. ¶ 15; Record of Inmate Discharge [ECF No. 1-5] 2). Petitioner remained in ICE custody from July 22, 2016 to October 17, 2016, for a total of 86 days. (Pet. ¶ 16).

On October 17, 2016, because Petitioner was not removed during the period prescribed by law, he was placed under an Order of Supervision ("OSUP") [ECF No. 1-6], that required him to comply with various conditions, such as appearing in person at specific times and places for check-ins with ICE, obeying all federal, state, and local laws and ordinances, and providing information to ICE about his nationality, circumstances, habits, associations, activities, travel, residence, and employment. (*See* OSUP). Petitioner complied with each and every condition of his release. (Pet. ¶¶ 20–22).

On December 2, 2025, Petitioner appeared for a scheduled check-in with ICE. (Pet. ¶ 24). At this appointment, Petitioner's OSUP was revoked, and Petitioner was re-detained and placed in the Florida Soft Side South Detention Facility, commonly known as Alligator Alcatraz. (*Id.*; *see*

---

[1]    Due to the lack of diplomatic relations between Cuba and the United States, the two nations do not have a repatriation agreement in place and no agreed upon mechanism exists by which the United States can return Cuban citizens to Cuba. (*See* Pet. ¶¶ 18–19).

*also* Declaration of Deportation Officer Ricardo Herrero ("Ofc. Herrero Decl.") [ECF No. 6-9] ¶¶ 17–18). Petitioner alleges that ICE failed to provide an individualized determination that, based on changed circumstances, Petitioner's removal to Cuba had become significantly likely in the reasonably foreseeable future or that the Cuban government found Petitioner eligible for repatriation. (Pet. ¶¶ 25, 29). Petitioner further alleges that ICE failed to provide justification for the revocation of Petitioner's OSUP and Petitioner's re-detention and failed to procure travel documents from Cuba or otherwise effect Petitioner's removal. (*Id.* ¶¶ 26, 28).

On January 10, 2026, a Notice of Removal was issued indicating that ICE intended to remove Petitioner to Mexico. [ECF No. 6-8]. On or around February 24, 2026, Petitioner was transferred from Alligator Alcatraz to Port Isabel and El Valle Detention Centers in Texas with the intention to remove him to Mexico, but third country removal did not occur. (Pet. ¶¶ 30–31; Ofc. Herrero Decl. ¶¶ 19–20). On March 2, 2026, Petitioner was transferred to Krome North Service Processing Center ("Krome") in Miami, Florida. (Pet. ¶ 31; Ofc. Herrero Decl. ¶ 21; Detention History [ECF No. 6-10]). Because Petitioner was suffering a medical predicament serious enough to warrant immediate hospitalization, Petitioner was immediately transported to a medical facility in Miami-Dade County, Florida. (Pet. ¶ 32; Detention History [ECF No. 6-10]). Petitioner was eventually transported back to Krome, where he is currently detained. (Detention History [ECF No. 6-10]).

Petitioner seeks his immediate release from ICE custody on three grounds: (1) ICE lacked the authority to revoke his OSUP; (2) the revocation of Petitioner's OSUP without providing him notice and a meaningful opportunity to respond violated his procedural due process rights under the Fifth Amendment; (3) Petitioner's continued detention violates his substantive due process rights under the Fifth Amendment. (*See generally* Pet.). Respondents contend that the Court lacks

3

subject matter jurisdiction over Petitioner's claims and Petitioner's continued detention is lawful and constitutional. (*See* Resp.). Remarkably, Respondents fail to address Petitioner's arguments that his due process rights were violated by the abrupt revocation of his OSUP without notice or an opportunity to be heard, and without any individualized circumstances. (*See id.*).

## II.     LEGAL STANDARD

District courts are authorized to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). "The typical remedy for such detention is, of course, release." *Id.* (citation omitted). "Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law." *Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) (citing *Nelson v. Campbell*, 541 U.S. 637, 644 (2004); other citations omitted). Further, the Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

## III.     DISCUSSION

Petitioner seeks a writ of habeas corpus for his immediate release from custody, and Respondents oppose. The Court addresses each argument below.

### A.  Subject Matter Jurisdiction

The Court begins with the threshold issue of jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is

4

not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Petitioner proceeds under 28 U.S.C. § 2241, which confers subject matter jurisdiction over "statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688. But Respondents argue 8 U.S.C. § 1252(g) applies, depriving the Court of jurisdiction over this case. (*See* Resp. 3–4). As relevant here, § 1252(g) strips courts of jurisdiction over actions "arising from" the decision or action by the Attorney General to "execute removal orders against any alien[.]" 8 U.S.C. § 1252(g) (alteration added). Petitioner maintains § 1252(g) is inapplicable because he is not challenging the legality or execution of the removal order but rather is challenging the improper revocation of his OSUP and the constitutionality of his continued detention. (Reply 1–2). The Court agrees with Petitioner.

Respondents argue Petitioner effectively is seeking release from detention to prevent the execution of the removal order, thereby implicating § 1252(g), which Respondents claim bars review of challenges to the execution of a removal order, including the government's authority to execute their removal orders. (Resp. 3–4). In support, Respondents cite an Eleventh Circuit case affirming a district court's dismissal on jurisdictional grounds of a habeas petition seeking to stay removal. (*See id.* 4 (citing *Camarena v. Dir., Immigr. and Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021)). This case is not helpful here. As Petitioner notes, the Petition seeks only Petitioner's release from detention. (*See* Reply 1–2). Petitioner does not challenge the validity of the removal order. Respondents point to nothing in the record — no noncompliance or evidence of risk of flight — suggesting release would interfere with Petitioner's removal. (*See* Resp.). In fact, Petitioner has complied with his OSUP for nearly ten years prior to his re-detention — a fact Respondents do not dispute. (*See* Pet. ¶ 20; *see generally* Resp.).

Ultimately, Petitioner does not challenge "ICE's ability to detain him in order to deport him. Rather, he challenges ICE's ability to hold him in detention without adequate process for weeks and months on end." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 153 (W.D.N.Y. May 2, 2025) (concluding subject matter existed (citations omitted)); *see also Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 1895479, at *3–4 (S.D. Fla. July 8, 2025). Such a claim targets the underlying legal bases of ICE's actions, falling squarely within the subject matter jurisdiction of this Court.

**B. Due Process Claims: OSUP Revocation and Re-Detention**

Petitioner argues his Fifth Amendment right to due process was violated when his OSUP was suddenly revoked without prior notice or an opportunity to be heard, and in the absence of any individualized change in circumstances justifying such revocation. As mentioned, Respondent does not address Petitioner's Fifth Amendment arguments. (*See generally* Resp.); *United States v. Evans*, 292 F. App'x 761, 762 (11th Cir. 2008) ("When a party fails to provide arguments on the merits of an issue, and makes only passing reference to it in the initial brief, the argument is deemed waived and we need not address it." (citation omitted)).

**1. Petitioner does not show that ICE lacked a basis to revoke his OSUP**

First, the Court will address whether ICE had a valid basis to revoke Petitioner's OSUP and detain him. The Notice of Revocation indicates that ICE revoked Petitioner's OSUP "[p]ursuant to 8 C.F.R. § 241.4(l)(2)." [ECF No. 6-6].

Under 8 C.F.R. § 241.4(l)(2), a "district director" or field office director can revoke release when he or she determines that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*; *see also id.* § 1.2 (defining "district director" to encompass field office directors); *Ceesay*, 781 F. Supp. 3d at 160 (clarifying that "Executive Associate Commissioner" means the Executive Associate Director

6

of ICE). "Release may be revoked in the exercise of discretion when, in the opinion of the revoking official . . . [i]t is appropriate to enforce a removal order . . . ." 8 C.F.R. § 241.4(l)(2)(iii).

Petitioner argues that his detention is unlawful because he never violated the terms of his supervision, and no change in circumstances warranted revocation of his OSUP. (*See* Pet. ¶¶ 61–70). However, this argument is mistaken because § 241.4(l)(2) provides alternative bases for revocation other than violation of the conditions of release or changed circumstances. Specifically, § 241.4(l)(2) permits revocation "in the exercise of discretion when, in the opinion of the revoking official" the purposes of release have been served; the alien violates any condition of release; it is appropriate to enforce a removal order or to commence removal proceedings against an alien; or the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate. § 241.4(l)(2). Because the Assistant Field Officer Director indicated that revocation of Petitioner's release is in the public interest and circumstances do not reasonably permit referral of his case to the Executive Associate Director for revocation, there was a statutory basis for Petitioner's OSUP to be revoked. However, the revocation must still comport with the Due Process clause and ICE's procedures.

### 2. ICE failed to provide Petitioner with notice of the revocation of his OSUP or an informal interview, in violation of its own regulations and the Due Process Clause

Next, the Court addresses whether ICE exceeded its statutory authority in detaining Petitioner, in violation of Petitioner's due process rights. When an alien is on supervised release and the 90-day removal period specified in 8 U.S.C. § 1231 has passed, ICE may detain the alien by following its own regulations, set out in 8 C.F.R. §§ 241.4 and 241.13. *See Ceesay*, 781 F. Supp. 3d 159–66 (discussing § 241.4); *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (discussing § 241.13). And "ICE, like any agency, 'has the duty to follow its own federal

regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)).

An alien must be "notified of the reasons for revocation" upon revocation of an OSUP under § 241.4(l). 8 C.F.R. § 241.4(l)(1). "[A]fter his or her return to [ICE] custody" the alien must be "afforded an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* "If the alien is not released from custody following the informal interview," ICE must then commence "[t]he normal review process . . . with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked." *Id.* § 241.4(l)(3).

"The notice and informal interview requirement appears in § 241.4(1)(1), but not § 241.1(l)(2). However, courts have 'interpreted section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation' — meaning that the notice and informal interview requirement stated in § 241.4(1)(1) applies to revocation under § 241.4(1)(2)." *Grigorian*, 2025 WL 2604573, at *6 (quoting *Ceesay*, 781 F. Supp. 3d at 163 (collecting cases)); *see also Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) (Sotomayor, J., statement respecting the Court's disposition of the application) (stating that under 8 C.F.R. § 241.4(l), "in order to revoke conditional release the Government must provide adequate notice and 'promptly' arrange an 'initial informal interview . . . to afford the alien an opportunity to respond to the reasons for the revocation stated in the notification'"); *Zhu v. Genalo*, ___ F. Supp. 3d ___, 2025 WL 2452352, at *6 (S.D.N.Y. Aug. 26, 2025) ("[P]aragraph (*l*) sets forth a unified set of procedures for the revocation of removal."); *but see Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *6 (S.D. Fla. Aug. 8, 2025) (finding that "it does not appear

that Petitioner was entitled notice or an informal interview" because Petitioner's OSUP was revoked pursuant to § 241.4(l)(2), not § 241.4(l)(1)). This Court echoes the reasoning set forth in *Grigorian*:

> The four reasons for revocation stated in § 241.4(l)(2) are inclusive of the single reason stated in § 241.4(l)(1) — violation of conditions of release. "This overlap belies the . . . argument that these are two separate processes[] and suggests that paragraph (l) sets forth a unified set of procedures for the revocation of removal." Indeed, it would be nonsensical if an alien detained for violation of conditions of release would receive notice and an interview under § 241.4(l)(1) but not § 241.4(l)(2) given that both provisions specify that a violation of conditions of release is a basis for revoking an OSUP.

*Grigorian*, 2025 WL 2604573, at *6 (quoting *Zhu*, ___ F. Supp. 3d at ___, 2025 WL 2452352, at *6).

As such, here, the notice and informal interview requirements of § 241.4(l)(1) apply to the revocation of Petitioner's OSUP under § 241.4(l)(2). Respondents do not dispute this in their briefing and did not dispute this in the hearing on this matter. Indeed, the Notice of Revocation clearly states that Petitioner "will promptly be afforded an informal interview and the opportunity to respond to the reasons for the revocation and to provide evidence to demonstrate that your removal is unlikely." [ECF No. 6-6].

### i.    Notice

Respondents attached a copy of the Notice of Revocation of Release allegedly provided to Petitioner at some point on December 2, 2025, during his check-in with ICE. (*See* [ECF No. 6-6]). Petitioner disputes that he was provided notice of the revocation of his OSUP. (Pet. ¶ 79). Based on a review of the face of the Notice and the statements of Officer Herrero, the Court concludes

9

that the Notice failed to meet the procedural requirements of 8 C.F.R. § 241.4(l). The Court, therefore, need not resolve the question of whether Petitioner was actually served with the Notice.[2]

Importantly, § 241.4(l) requires that a petitioner "be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.4(l)(1). "The undisputed purpose of this requirement is to give the non-citizen an opportunity to respond to or otherwise contest the reasons for the revocation." *Zhang v. Genalo*, ___ F. Supp. 3d ___, 2025 WL 3733542 (E.D.N.Y. Dec. 28, 2025). For example, in *Perez-Escobar v. Moniz*, a notice of revocation was found to be deficient where ICE "merely asserted that 'there is a significant likelihood of removal in the reasonably foreseeable future,' that 'the purpose of [Petitioner's] release has been served,' and that 'it is appropriate to enforce the removal order'" without "identify[ing] any specific changed circumstances to support these assertions." 792 F. Supp. 3d 224, 226 (D. Mass. July 24, 2025).

Petitioner's Notice states that his OSUP was revoked because "[i]t is appropriate to enforce your removal order, which became administratively final on 9/26/2001." [ECF No. 6-6]. In other words, the sole reason for revocation was ICE's assertion that it is appropriate to enforce a twenty-four-year-old removal order. The Notice further states that "[t]his decision has been made based on a thorough review of your case and the removal options available at this time." *Id.* No additional or individualized information is listed on the Notice.

---

[2] The Court does, however, note that proof of service of the Notice of Revocation on Petitioner is questionable at best. The way the proof of service was drafted leaves the Court with more questions than answers. For example, the title of the ICE Deportation Officer who allegedly served Petitioner, Petitioner's name, where Petitioner was served, the date of service, and the date associated with "Detainee Signature" are all typed, while the time of service is handwritten in blue ink. This leads to questions about the accuracy of the date of service, as the form seems to have been filled out prior to service. Further, the proof of service does not have Petitioner's signature. While the Notice indicates Petitioner "Refused to Sign" Respondents include no supporting declarations or affidavits from the serving officer to show that service was truly effectuated or what the conditions were of Petitioner's refusal. Needless to say, the Court has its doubts about service, and Respondents offer nothing to support their argument that Petitioner was served.

Petitioner argues that the United States and Cuba do not have a repatriation agreement and no agreed upon mechanism exists by which the United States can return Cuban citizens to Cuba. (Pet. ¶¶ 18–19). Petitioner asserts that due to this "tumultuous relationship . . . the vast majority of Cubans subject to removal orders are released from immigration detention" and placed under an Order of Supervision, such is Petitioner's circumstance. (*Id.*). Petitioner contends that ICE has no indication that the Cuban government has found Petitioner eligible for repatriation or that the Cuban government has issued travel documents for Petitioner. (*Id.* ¶ 29). Respondents do not respond to these assertions and do not present any evidence to contradict Petitioner's claims. The Notice of Revocation does not explain what has changed that will allow for Petitioner's removal and does not even inform Petitioner to where he will be removed. (*See* [ECF No. 6-6]). Respondents stated in the hearing that ICE's ability to remove individuals to third countries was the changed circumstances that prompted the revocation of Petitioner's OSUP. However, not only is this reasoning not included in the Notice of Revocation, but Petitioner was not given a Notice of Removal indicating that ICE intended to remove him to Mexico until more than one month after he had been detained and allegedly served with the Notice of Revocation. (*See* [ECF No. 6-8]). Petitioner also denied that he received this Notice of Removal to Mexico at all during the hearing.

Respondents provided no information as to the reasoning for the revocation of Petitioner's OSUP in response to the Petition. (*See* Resp.). They provided no declarations or affidavits from the Officer who prepared the Notice or allegedly served Petitioner with it. Although Respondents offer the Declaration of Deportation Officer Ricardo Herrero [ECF No. 6-9], this is of little use to the Court. Officer Herrero is the Deportation Officer assigned to Petitioner at Krome — a facility that Petitioner was transferred to on February 28, 2026. (*See* Ofc. Herrero Decl. ¶¶ 1, 2, 5, 21). Officer Herrero has *no personal knowledge* regarding the Notice of Revocation as he only recently

11

became involved in Petitioner's case. (*See id.*). He has no personal knowledge of the circumstances surrounding the preparation or issuance of the Notice, much less why Petitioner's OSUP was revoked or what ICE's original plan was for Petitioner's removal.

The Notice's purported reasoning that "[t]his decision has been made based on a thorough review of your case and the removal options available at this time" [ECF No. 6-6], is insufficient for several reasons. First, the Court notes the rather obvious fact that the removal order is over twenty-four years old and nothing seems to have changed in Petitioner's file between the first time ICE failed to deport Petitioner in 2016 to now. Also, there is no evidence to suggest that there were removal options available for Petitioner at the time the Notice was issued. As mentioned, the Notice of Removal to Mexico [ECF No. 6-8], was not issued until January 10, 2026, over one month after Petitioner's OSUP was revoked. And even still, attempted removal to Mexico failed and Respondents have not presented any other plan of removal. (Pet. ¶ 31). ICE had no valid travel documents for Petitioner at the time the Notice was served, and it still has not secured the necessary travel documents to effect Petitioner's removal. Thus, the statement on the Notice appears to be objectively false.

The Court therefore concludes that the "reasons" given in the Notice of Revocation were based on inaccurate assertions of fact. It is unclear from the record whether these false statements were made intentionally or negligently (for example, the redacted Officer signing off on a boilerplate notice without any knowledge or consideration of the individual facts and circumstances relates to Petitioner's removal at the time it was issued). But the Court need not resolve that issue today, for it is well settled that a notice that provides factually inaccurate reasons for revocation cannot serve as proper notice under § 241.4, making the revocation of Petitioner's OSUP and his resulting detention unlawful. *See Funes v. Frances*, ___ F. Supp. 3d ___, 2025 WL

3263896, at *17 (S.D.N.Y. Nov. 24, 2025) (noting that a "statement did not supply the notice required by § 241.4(l) . . . because the acquisition of [petitioner's] passport — which [the deportation officer] testified was the reason for the revocation on September 8 — had not yet occurred"); *see id.* (noting that other statements also "do not satisfy § 241.4(l)" because the officer's "statements during the check-in as to the agency's reasons for taking [petitioner] into custody also were not accurate"); *see id.* at ___, 2025 WL 3263896, at *18 (noting that a third statement was also inadequate because "the Notice [wa]s factually inaccurate on fundamental points"); *see also Zhang,* ___ F. Supp. 3d at ___, 2025 WL 3733542.

### ii.    Informal Interview

Even assuming *arguendo* that the Notice of Revocation was adequate and did provide sufficient notice, the Court would still have further reason to question whether Respondents met their burden of proving that Petitioner's revocation was lawful because there is no evidence in the record establishing that the meaning of the Notice was explained to Petitioner or that he had an opportunity to respond to the purported reasons contained therein. Under § 241.4(l), the purpose of a notice of revocation is that the noncitizen "be afforded an initial informal interview . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241(l)(1). And as just discussed, the text of the Notice alone was not sufficient to have made Petitioner properly aware of the "reasons" for his revocation.

Further, Petitioner alleges that he was never given the required informal interview to respond to the Notice of Revocation — and Respondents have not met their burden of establishing otherwise. The sole piece of evidence in the record that an informal interview occurred is Officer Herrero's Declaration, which, as discussed *supra,* is not reliable because it is not based on his personal knowledge. (*See* [ECF No. 6-9]). As Officer Herrero does not base this statement on his

13

personal knowledge and does not provide any factual support for this statement, the Court will not consider it. (*See id.*). Even if the Court were to consider it, Officer Herrero does not provide sufficient detail to determine whether the alleged informal interview was sufficient to satisfy due process and § 241.4(l). Respondents did not provide additional information or evidence at the hearing.

For all these reasons, the Court finds that Petitioner was not provided sufficient notice or given an opportunity to respond to the reasons for revocation as required by 8 C.F.R. § 241.4(l). "The proper remedy for such a violation is release."[3] *Rubanov v. Trump*, No. 25-cv-23034, Order Granting Writ of Habeas Corpus [ECF No. 12] filed July 30, 2025 (S.D. Fla. 2025) (granting writ of habeas corpus and ordering release after ICE arrested and detained the petitioner without following the requirements of 8 C.F.R. §§ 241.13 and 241.4) (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)).[4]

## C. Temporary Restraining Order

Petitioner also requests a temporary restraining order to prevent his removal from this jurisdiction. (Pet. 14). Because this Court is ordering Petitioner's release, the Court need not address this request. Petitioner's due process rights were violated when his OSUP was revoked without notice or opportunity to be heard, and any future attempt to remove Petitioner must avoid further violation of his constitutional rights.

---

[3]    Because the Court finds that Petitioner must be released, it need not consider Petitioner's argument that his detention beyond the removal period violates the Due Process Clause under *Zadvydas* or *Mathews v. Eldridge. See Grigorian*, 2025 WL 2604573, at *10 n.7.

[4]    To be clear, Petitioner may still be detained and removed after his release, and his reinstated OSUP may be revoked. However, any detention, removal, or OSUP revocation must comport with the Due Process Clause and ICE's regulations.

**D.  Attorney's Fees and Costs**

The Court also declines to address Petitioner's perfunctory request for costs and attorney's fees, as he supplies no basis for such an award. (*See* Pet. ¶ 7); *see In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 13-md-2495, 2018 WL 2929831, at *9 (N.D. Ga. June 8, 2018) (plaintiff not entitled to attorney's fees where he "provided no viable statutory or contractual basis for an award of attorneys' fees, and the [c]ourt can discern no basis from the record for awarding attorneys' fees other than [a] conclusory request in the" complaint (citation omitted)).

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1], is **GRANTED**.

2.      Respondents shall release Petitioner from custody **IMMEDIATELY**, pursuant to the terms of Petitioner's prior Order of Supervision.

3.      Respondents shall file a notice with the Court within 48 hours confirming Petitioner's release in compliance with this Order.

4.      The Clerk is directed to **CLOSE** this case.

5.      The Court retains jurisdiction to enforce this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26 day of March 2026.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

cc:     all counsel of record

15